# UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

In re:  PATTY HARKINS,                         Case No. 01-20008-A
       Debtor.                                         Chapter 7

PATTY HARKINS,
       Plaintiff,

v.                                                                  APN 05-7093

EDUCATIONAL CREDIT MANAGEMENT CORP.,
       Defendant.

_____

## MEMORANDUM OPINION AND ORDER
_____

This matter is before the Court on the plaintiff's Complaint to Determine Dischargeability Pursuant to 11 U.S.C. § 523(a)(8)(B) of her student loan debt. The plaintiff debtor complains that despite her sincere efforts to repay her loan, the amount of the debt has more than doubled since she graduated from college. Educational Credit Management Corporation ("ECMC") argues that the debtor has the potential to earn a higher salary, has unnecessary expenses and could repay the loan. This Court must determine whether the plaintiff would suffer undue economic hardship if she is required to repay her student loan debt.

This is a core proceeding over which this Court has jurisdiction under 28 U.S.C. §§ 157(b)(2) and 1334(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. After taking the matter under advisement, we make the following Findings of Fact and Conclusions of Law.

## I. FINDINGS OF FACT

The debtor filed for relief under Chapter 7 of the Bankruptcy Code ("the Code") on January 2, 2001, and received her discharge on April 12, 2001; the debtor did not seek to discharge any of her student loan debt at that time.

On July 7, 2005, the debtor moved to reopen her case, which motion was granted by Order entered August 22, 2005. The stated purpose for reopening the case was to seek the discharge of her student loan debt. On September 6, 2005, the instant adversary proceeding was filed by the debtor to do just that.

The debtor in this case is a single mother of one child and is quite well educated. She obtained a Bachelor of Science degree in Business Administration from Edinborough University in 1992, a Masters degree in Business Administration with a Graduate Certificate in Human Resources from Gannon University in 1998, and is a certified Emergency Medical Technician. The debtor is currently the Human Resources Director for Mid-Eastern Builders with an annual gross salary in the amount of $39,338.00.[1] This is her second job since graduating from college with her Masters degree; before being hired by Mid-Eastern Builders she worked as a human resources secretary for another company earning approximately $25,000.00 per year.

The debtor testified that she has no opportunity for advancement in her current job and has made limited efforts to find another job in the Human Resources field. She states that she applied with several companies in the recent past and sent

---

[1] This figure represents the debtor's income in 2006 and was arrived at by multiplying her bi-weekly pay of $1,513.00 by 26. This amount is $9,297 less than her 2005 salary due a change in staffing by her employer.

2

out three additional resumes in January, 2006, in an effort to obtain a higher paying position. She testified, however, that she must be extremely careful in her employment search because she may immediately lose her job if it is discovered she is looking elsewhere for employment; therefore activities such as posting her resume on job websites are impossible. Finally, the debtor stated that she has never sought a paying position based on her EMT certification, which she earned through the United States Army Reserves.

She has other sources of income as well. She receives $130.00 per week in child support, which amount was established in September 2005, by a mediated agreement[2] and $350 per month from a friend to whom she rents a room in her home; however, this boarding arrangement is scheduled to terminate May 1, 2006.[3] The debtor is also in the United States Army Reserves and receives a net income of $235 a month in exchange for attending a monthly drill weekend and a two week service period once a year. She plans on remaining in the Reserves for a minimum of 20 years so that she will be eligible for a military pension. All totaled, the debtor's current net monthly income is approximately $3,291.00.

The debtor's total monthly expenses are $3,647.01. As a single parent, the debtor is responsible for all the monthly bills in her home. The debtor's major monthly expenses include:

---

[2] The child's father also has an eighteen-year-old child for whom he pays child support. Once that child finishes high school in June, 2005, the debtor will be in a position to seek an increase in child support for her child.
[3] The debtor stated that once her friend moves out of her home she will likely not look for another person to rent the room because of concerns for her daughter's safety. The debtor testified that she had only allowed the friend to move into her home because they had known each other for an extensive period of time prior to the arrangement.

3

| | |
|---|---|
| Mortgage | $845.00 |
| Electricity | $130.00 |
| Car Payment | $355.00 |
| Child Care | $560.00 |
| Telephone | $ 50.00 |
| Cell Phone | $ 98.00 |
| Cable | $ 48.00 |
| Gasoline | $250.00 |
| Groceries | $450.00 |
| Medical | $300.00 |
| Clothing | $125.00 |
| Medical Ins. | $143.00 |
| Life Insurance | $ 30.00 |

The debtor's expenses also include $300.00 a month for medical treatment and prescribed medication for her various illnesses; she is currently being treated for endometriosis, chronic pain syndrome, interstitial cystitis, vulvovestibulitis, migraines, and is currently being tested for a possible liver problem. The debtor stated that in the last year she has had at least one doctor's office visit every month and takes seven medications daily to manage the symptoms of her illnesses, which range in price from $7.00 to $50.00 per month per prescription. She further testified that as a Reservist she is not entitled to medical care from the military. She stated that it is not common for her to miss work due to her health problems, but that when she does she is allowed to work a flexible schedule in order to make up any time lost due to illness or doctors appointments.

In explaining some of her expenses, the debtor stated that day care for her 3-year-old daughter costs $140.00 per week, and that despite her vegetarian lifestyle and shopping at the commissary, she spends approximately $450.00 a month on food for herself and her daughter. She also testified that she purchased a house in April,

2003, utilizing a Veteran's Administration loan and also bought a new car that same year, which was also financed.  She stated that she bought the house because her mortgage payment was less than the rent she was paying for her apartment.

The debtor received large tax refunds in 2002 and 2003, $1,449.00 and $3,310.00, respectively, neither of which she put toward her student loan obligations.

Currently, Ms. Harkins has approximately $4,500.00 in her 401(k) account, to which she continues to contribute $112.00 each month.  Additionally, she pays $55.88 per month on a loan she took out of her 401(k) account, but testified that this loan will be paid off within three months from the time of the hearing.

The debtor maintains that when she graduated from college, her student loans had a balance of $40,000.00, but have grown to a current balance of approximately $84,000.00.  The debtor testified that she consolidated her loans in an effort to reduce her monthly payment and tried to maintain her student loans in a current status, obtaining forbearances or deferments when she was unable to make her loan payments.  She testified that she would make the minimum payments necessary in between forbearances or deferments and that she continued that cycle until she used her last available forbearance in April, 2004. She testified further that she was aware of the William D. Ford Direct Loan program, but that she did not apply to the program because she was unable to make even the minimum repayment option it offered.  The debtor's options under the William D. Ford Direct Loan program, based on her higher 2005 adjusted gross income of $48,635.00,[4] were as follows:

---

[4] No evidence was presented on any amended payment options based on the debtor's lower projected 2006 income of $39,338.00, therefore the Court must consider the amounts provided.

5

| Repayment Plan | Term in mos. | Initial Mo. Payments |
| --- | --- | --- |
| Standard | 120 | $1037.09 |
| Extended | 360 | $ 635.23 |
| Graduated | 360 | $ 581.32 |
| Income Contingent | 189 | $ 596.75 |

Since 1992, the debtor has personally paid approximately $3,000.00 and the Army has paid approximately $7,000.00 toward her student loan debt.

## II. CONCLUSIONS OF LAW

Student loans are generally nondischargeable "and pass through the bankruptcy process unaffected." *In re Gill*, 326 B.R. 611, 624 (Bankr. E.D. Va. 2005) (citing *Ekanesi v. Educ. Res. Inst. (In re Ekanesi)*, 325 F.3d 541, 545 (4th Cir. 2003). The government-guaranteed student lending program affords every applicant the opportunity to obtain a higher education regardless of personal credit history; precisely why the program's integrity must be maintained by excepting student loan debt from discharge in bankruptcy. *Educ. Credit Mgmt. Corp. v. Frushour (In re Frushour)*, 433 F.3d 393, 399 (4th Cir. 2005), *Thompson v. New Mexico Student Loan Guarantee Corp. (In re Thompson)*, 329 B.R. 145, 172-73 (Bankr. E.D. Va. 2005). "'[P]revent[ing] indebted students...from filing for bankruptcy immediately upon graduation, thereby absolving themselves of the obligation to repay their student loans,'" ensures there will be money in the program for other students to borrow. *In re Kielisch*, 258 F.3d 315, 320 (4th Cir. 2001) (quoting *in re Hornsby*, 144 F.3d 433, 436-37 (6th Cir. 1998)). Congress did recognize, however, that dire circumstances might exist in a bankruptcy case that could necessitate the exceptional discharge of

6

student loan debt, but only in instances when repayment causes "undue hardship" on the debtor and his or her family. 11 U.S.C. § 523(a)(8) (2004).[5] Congress did not intend for such a discharge to be easily obtained. The debtor must prove undue hardship by a preponderance of the evidence. *Frushour*, 433 F.3d at 400, *see In re Williams*, No. 01-35653, APN 03-3020, 2003 Bankr. Lexis 2146, at *6 (E.D. Va. Aug. 18, 2003).

Partial discharges are also available to debtors when the circumstances do not warrant a full discharge of their student loan debt. *See Kielisch*, 258 F.3d at 324, *Educ. Credit Mgmt. Corp. v. Waterhouse*, 333 B.R. 103, 114 (Bankr. W.D.N.C. 2005). However, the same "undue hardship" standard must be found before a partial discharge can be granted. *Kielisch*, 258 F.3d at 315, *Waterhouse*, 333 B.R. at 114.

The word "undue" is not defined in the Code, but "generally means 'unwarranted' or 'excessive,'" and must be something more than the hardship

---

[5] 11 U.S.C. § 523 (a)(8) reads:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title [11 USCS § 727, 1141, 1228(a), 1228(b), or 1328(b)] does not discharge an individual debtor from any debt—
> (8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for--
>     (A) (i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
>         (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
>     (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986 [26 USCS § 221(d)(1)], incurred by a debtor who is an individual.

11 U.S.C. § 523(a)(8)(2004).

normally found in bankruptcy cases or else every bankrupt would arguably suffer an undue hardship. *Frushour*, 433 F.3d at 399, *see also Pa. Higher Educ. Assistance Agency v. Faish (In re Faish)*, 72 F.3d 298, 306 (3d Cir. 1995) (holding that the debtor was unable to discharge student loans "merely because repayment of the borrowed funds would require some major personal and financial sacrifices"), *Burton v. Educ. Credit Mgmt. Corp. (In re Burton)*, No. 04-53297, APN 05-5016, 2006 Bankr. Lexis 498, at *32 (E.D. Va. Jan. 11, 2006) (stating that undue hardship "must mean more than unpleasantness associated with repayment of a just debt") (citing *Jones v. Nat'l Payment Ctr. (In re Jones),* 242 B.R. 321, 325 (Bankr. E.D. Va. 1998), *aff'd in part and remanded on other grounds sub nom. Educ. Credit Mgmt. Corp. v. Jones*, No. 3:99CV258, 1999 U.S. Dist. LEXIS 23088 (E.D. Va. July 14, 1999)).

The Fourth Circuit has adopted the *Brunner*[6] test to determine undue hardship in Chapter 7 bankruptcy cases.[7] *Frushour*, 433 F.3d at 400. Under this test the debtor must prove:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Brunner*, 831 F.2d at 396.

---

[6] *Brunner v. N.Y. State Higher Educ. Servs. Corp. (In re Brunner)*, 381 F.2d 395 (2d Cir. 1987).
[7] The *Brunner* test has also been adopted by the Fourth Circuit in analyzing Chapter 13 cases as well. *Ekenasi*, 325 F.3d at 546.

8

The case at bar is a difficult one. The Court must balance Congress' intent to protect the student loan program's viability by not allowing the discharge of such debt, *see Frushour*, 433 F.3d at 399, with the difficulties the debtor has encountered in attempting to repay her loan. However, after analyzing the facts in the instant case, the Court finds that the debtor would suffer undue hardship if she is required to repay the entire debt; this is not so if the Court limits her monthly payment, therefore she is entitled to a partial discharge.

A.  A Minimal Standard of Living

The first prong of the *Brunner* test addresses the issue of necessary expenses and the minimal standard of living. This is a very difficult issue to address in bankruptcy when debtors are admittedly in serious financial condition; should "minimal standard of living" be measured by the poverty guidelines established by the Department of Health and Human Services as some courts have found, (*McCormack v. Educ. Credit Mgmt. Corp. (In re McCormack)*, No. 99-10637, APN 99-80401-W, 2000 Bankr. Lexis 1920, at *134 (D.S.C. July 6, 2000) (citing *In re Griffin*, 197 B.R. 144, 147 (Bankr. E.D. Okla. 1996)), or does such a finding require an analysis of income versus expenses to ensure that the debtor is able to meet his or her family's minimal "needs for care, including food, shelter, clothing, and medical treatment" while still repaying the loan? *In re Murphy*, 305 B.R. 780, 793 (Bankr. E.D. Va. 2004). This Court has previously held that the latter is the better approach, *see Burton*, 2006 Bankr. Lexis 498, at *34-*35. There is no bright-line test, but rather each case must be determined on its own merits. *Frushour*, 433 F.3d at 400-01. "In making this

9

assessment, a court should...ascertain[] whether the debtor has attempted to minimize the expenses of herself and her dependants." *Gill*, 326 B.R. at 625 (citing *United States Dep't. of Health and Human Services v. Smitley (In re Smitley)*, 347 F.3d 109, 117 (4th Cir. 2003)). Courts in the Fourth Circuit have generally held that if the debtor experiences a substantial monthly monetary deficit, then he or she is entitled to a discharge (or at least a partial discharge) of his or her student loan debt. *Wilson v. Educ. Credit Mgmt. Corp. (In re Wilson),* No. 01-30624, 2002 Bankr. Lexis 1743, at *9-*10 (Bankr. E.D. Va. June 25, 2002) (holding that the debtor could not maintain a minimal standard of living when debtor had monthly expenses of $1,829.03 and income of $1,578.99); *McCormack*, 2000 Bankr. Lexis 1920, at *14-*16 (allowing partial discharge when debtor's monthly expenses were $2,446.48 and income was $2,078.00); *Vermont Student Assistance Corp. v. Coulson (In re Coulson)*, 253 B.R. 174, 178 (W.D.N.C. 2000) (finding that the first *Brunner* prong was met where "debtor's expenses clearly exceed[ed] her income, even though debtor ha[d] done almost everything possible to maximize her income and minimize her expenses"); *Ammirati v. Nellie Mae, Inc. (In re Ammirati),* 187 B.R. 902, 907 (D.S.C. 1995) (holding that there was no error where the bankruptcy court "found the debtor's current income [to be] $3,800.00 [monthly] with expenses of $4,350.00 and that, with the exception of selling his house, debtor had done everything possible to minimize expenses and maximize income"); *Reilly v. United Student Aid Funds, Inc. (In re Reilly),* 118 B.R. 38, 41 (Bankr. D. Md. 1990) (permitting the discharge when the debtor had a $600.00 per month deficiency of income to expenses).

Alternatively, courts in this Circuit have found that if there is even the smallest monthly surplus of income over expenses then the debtor is not entitled to a discharge of his or her student loan debt. *Virginia State Educ. Assistance Auth. v. Dillon,* 189 B.R. 382, 385 (W.D. Va. 1995) (holding there was no undue hardship where the debtor admitted she could she could pay $ 50-$ 75 each month on $ 2,000.00 student loan); *Love v. U.S. (In re Love),* 33 B.R. 753, 754 (Bankr. E.D. Va. 1983) (finding there was no undue hardship where debtor had a surplus of $30.00 per month with which to repay a $ 9,000.00 student loan); *Virginia Educ. Loan Auth. v. Archie (In re Archie),* 7 B.R. 715, 718-19 (Bankr. E.D. Va. 1980) (holding that there was no undue hardship where the evidence showed a surplus of $37.13 with which to repay approximately $2,000.00 in student loans). It is important to note that this is not the only factor to be considered in deciding this prong of the *Brunner* test; the Court must also look for frivolous or unnecessary spending by the debtor. *Educ. Credit Mgmt. Corp. v. Gouge*, 320 B.R. 582, 586 (W.D.N.C. 2005).

In the instant case, the debtor's monthly expenses exceed her monthly net income by approximately $400.00, which gap will only widen once her current boarder moves out of her home on May 1, 2006. While the debtor does not have any significantly extravagant expenses, the Court does note that she purchased a home and car in 2003, but the debtor's monthly mortgage and car payment are only $845.00 and $355.00, respectively, which are not unreasonable. The only expenses ECMC pointed out as too high were the debtor's cell phone bill of $98.00 per month and her grocery bill of $450.00 per month. As to the cell phone bill, no evidence was

11

presented regarding the expiration date of debtor's contract, and while the Court agrees that the debtor could likely substantially reduce this expense, such a reduction could only come at the end of her contract or else she might incur significant penalties. Without any such evidence, however, the Court can not give significant weight to this argument. As for the grocery expense, the Court agrees that this expense should be reduced, as it seems excessive for one woman and her three-year-old daughter, but even with reductions to both the cell phone and grocery bills, the debtor would still not be able to pay the minimum monthly payment of $596.75 offered under the William D. Ford program. If the debtor were required to pay almost $600.00 per month to ECMC she would have to forego some other necessary expense, such as her mortgage payment, car payment or her medical care costs, all of which are necessary to maintain a minimum standard of living.

Therefore, the Court finds that the debtor has met the first prong of the *Brunner* test as to her <u>entire</u> student loan debt. This is not to say, however, that the debtor is unable to pay any money on the debt and still maintain a minimal standard of living. For example, as stated above, the debtor is currently contributing $112.00 per month to her 401(k) account and repaying $55.88 per month on a loan she took out of that same account; these are not necessary expenses and the monies used to pay them could be applied to her student loan debt. If she were to pay $160.00 per month for 360 months, considering her current circumstances, she would ultimately repay $57,600.00. This amount seems equitable as it provides for repayment of the loan principal and a portion of the interest to ECMC, but does not increase the

12

debtor's current monthly expenses, thereby allowing her to maintain a minimal standard of living.

B. Additional Circumstances

The second prong of the *Brunner* test addresses the likelihood that the debtor's circumstances will continue for the majority of the debtor's repayment period and "is the heart of the *Brunner* test....Only a debtor with rare circumstances will satisfy this factor.  For example, although not exhaustive, a debtor might meet this test if she can show 'illness, disability, a lack of usable job skills, or the existence of a large number of dependants.'" *Frushour*, 433 F.3d at 401 (quoting *Oyler v. Educ. Credit Mgmt. Corp. (In re Oyler)*, 397 F.3d 382, 386 (6th Cir. 2005).

The Court finds that in the case at bar rare circumstances do exist.  The debtor's inability to pay her debt has continued for approximately 8 years and in that time the debtor's loan balance has doubled.  The debtor's current employment affords her an annual salary approximately $15,000.00 higher than her last position and she has made attempts, albeit somewhat limited, to secure an even higher paying position. The debtor has explained that her ability to seek other employment is hampered by the fact that she may be fired from her current job should her employer discover her active employment search.  Additionally, the debtor has numerous medical issues that cause her to make at least monthly doctor's appointments.  Again, the debtor testified that she has not often been absent from work due to her conditions, but reiterated that she is able to take time off when necessary and work extra hours during the week to "make up" time missed.  These medical issues also

13

require that the debtor take monthly medications, which adds to her monthly expenses. Unlike the debtor in *Gouge,* who failed to meet the additional circumstances prong because the medical expenses he complained of would soon be paid off, *Gouge*, 320 B.R. at 587, the debtor in this case anticipates continued expenses of $300.00 for treatment and medications for an indefinite period of time.[8]

However, even considering all of the above, the Court continues to struggle to answer the question of whether the debtor's current financial status will persist for the majority of her repayment period given her level of education. Other courts have answered the question in the negative when the debtor had a good education and had previously earned a higher salary. *Frushour*, 433 F.3d at 401, *Mosko v. American Education Services (In re Mosko)*, No. 04-52834, APN 04-6077, 2005 Bankr. Lexis 1902, at *18-*19 (Bankr. M.D.N.C. Sept. 29, 2005) (hereinafter referred to as *Mosko I*) aff'd. *Educ. Credit Mgmt. Corp. v. Mosko*, No. 1:05CV11033, 2006 U.S. Dist. Lexis 20202, at *8-*9 (M.D.N.C., Mar. 1, 2006) (hereinafter referred to as *Mosko II*).

The decision by the *Frushour* court, however, is easily distinguishable from the case at bar. The debtor there failed to show any additional circumstances beyond the debt itself, making the debt nondischargeable. *Frushour*, 433 F.3d at 401. That court found that Frushour had numerous job skills (a real estate license, art degree, and an associate's degree in tourism), was a healthy person, and had left a higher paying position in the tourism industry for a lower paying one in her chosen field of art. *Id.* The *Frushour* court chastised the debtor for voluntarily decreasing her income and

---

[8] The debtor further testified that she was undergoing tests for a possible new health problem associated with her liver.

14

then attempting to discharge her student loan debt, noting that "'it is not uncommon for individuals to take jobs not to their liking in order to pay off their student loans.'" *Id.* at 402 (quoting O'Hearn v. Educ. Credit Mgmt. Corp. (In re O'Hearn), 339 F.3d 559, 556 (7th Cir. 2003). The debtor in the instant case has not voluntarily taken a reduction in pay to pursue a different career path and has provided information of other circumstances that impact her ability to repay this debt in its entirety.

Just as in *Frushour*, the debtor in *Mosko* also had previous higher earnings and increased job skills. *Mosko I*, 2005 Bankr. Lexis 1902, at \*19. There the debtor continued his education in his chosen field of computers to broaden his knowledge and make himself more marketable to employers. *Id.* While the court in that case found that there was a certainty of hopelessness in the debtor's employment situation in regards to his entire student loan debt, it also found that the specific factors mentioned above meant that the debtor could possibly increase his income and pay some portion of his debt. *Mosko II*, 2006 U.S. Dist. Lexis at \*8-\*9. That court found that when a debtor met the second prong of *Brunner* as to the entire debt due, but not to some portion thereof, a partial discharge of the student loan debt is the appropriate action. *Id.*

The Court here finds itself in a situation similar to that of the *Mosko* court. While we are satisfied that, given the debtor's current circumstances, she meets the second prong of the *Brunner* test as to her entire student loan debt, we also find that due to her level of education, the possibility of employment at a higher salary, and the

15

possibility of an increase in child support she may be able to increase her income in the future and therefore should repay a portion of the debt.

C. Good Faith

The final prong of the *Brunner* test, good faith, is perhaps the easiest to determine in the case at bar. "[G]ood faith encompasses all relevant factors." *Murphy*, 305 B.R. at 798. Of primary concern under this prong is whether the debtor has made any payments on the debt, and if so, the total of those payments. *Id.* The Court must also consider the ratio of student loan debt to overall debt, *see Wilson*, 2002 Bankr. Lexis 1743, at *11-*12 (citing *Lohr v. Sallie Mae (In re Lohr)*, 252 B.R. 84, 89 (Bankr. E.D. Va. 2000) (refusing to discharge student loan debt when it constituted the bulk of the debt in the bankruptcy), and "the length of time after the student loan became due that the debtor seeks to discharge the debt." *McCormack*, 2000 Bankr. Lexis 1920, at *19. Finally, the Court must consider whether the debtor has taken advantage of any and all repayment option programs available to her; however, failure to do so is not *per se* bad faith. *Murphy*, 305 B.R. at 799, *In re Simms*, 328 B.R. 437, 441 (Bankr. D. Md. 2005).

The debtor in this case, despite having chronic medical issues, has secured and maintained employment; she accepted a higher paying position shortly after obtaining her post-graduate entry level position and, most notably to this Court, joined the Army Reserves in an effort to repay her loans when her salary alone was insufficient to allow her to do so.

16

As to the length of time between the loan becoming due and the attempt to discharge the debt, this case is again distinguishable from *Brunner*. The debtor in *Brunner* filed for discharge of her student loan debt one month after it became due without making any attempts to repay the debt. *Brunner*, 831 F.2d 397. Similarly, the debtor in *Ekanesi* borrowed money to attend law school, passed the bar in 1997 and later that same year filed for bankruptcy. *Ekanesi*, 325 F.3d at 547. Ekanesi's Chapter 13 plan called for the direct payment of his student loan debt, but just three months after that plan was confirmed Ekanesi filed to discharge his student loan debt. *Id.* In stark contrast to those cases, the debtor here has attempted to repay her debt over an eight year period of time. Granted, the debtor did utilize all of her allowed forbearances and deferments, but did so in an effort to remain current during the times when she was unable to afford her payments.[9]

Over the eight year period that her loan has been due the debtor has paid $10,000.00 on her student loan debt, $3,000 of which she paid personally while the remainder was paid by the Army in return for her service in the Reserves. The inferred argument by ECMC, that payments made by the Army on her behalf should not be considered when determining the debtor's good faith, is wholly inconceivable. This Court finds that her willingness to enlist for the primary benefit of a partial college loan repayment is even greater evidence of her good faith in attempting to pay her debt.

---

[9] It seems appropriate to note that these forbearances and deferments were hardship based, as determined by ECMC, and were granted upon each request of the debtor.

17

While it is true that the debtor did not participate in the William D. Ford program, her reason for not doing so is compelling; she could not afford the minimum payment of almost $600.00 per month. The debtor experiences a deficit each month and even after trimming the limited number of expenses identified by the Court above, the debtor simply can not pay this amount.

Determining the percentage of debt comprised of student loans is a difficult question to answer as no evidence was presented on this issue and the procedural posture of the case makes it difficult for the Court to ascertain from the Court's records. As stated above, this case was originally filed in 2001 before records were stored electronically, and as the debtor simply moved to reopen her case she was not required to and did not refile her original schedules. However, because neither party mentioned this factor at any point leading up to or during the trial, the Court will not give it any significant weight.

One fact that is detrimental to the debtor's case is that she received two tax refunds in the amounts of $1,449.00 and $3,310.00 in the years 2002 and 2003, but did not pay any of those monies on her student loan debt. The debtor testified that she used the 2002 refund to pay for the birth of her child, which explanation the Court accepts, but she provided no accounting for the 2003 refund. The Court understands that when living within financial constraints as the debtor has been, a lump sum of money, such as a tax refund, can easily be spent to provide for some financial breathing room, but it seriously considers this fact in determining the debtor's good faith.

However, considering all the relevant factors under this prong, the tax refund issue notwithstanding, the Court finds that the debtor did make a good faith effort to repay her student loan before seeking its discharge.

D. Partial Discharge

"[Partial discharge] is only appropriate where the Court is unable to determine whether the debtor's financial distress will continue indefinitely." *Salinas v. United Student Aid Funds, Inc. (In re Salinas)*, 240 B.R. 305 (Bankr. W.D. Wis. 1999), *see also Educ. Credit Mgmt. Corp. v. Jones (In re Jones)*, No. 3:99CV258, 1999 U.S. Dist. Lexis 23088, at *8 (E.D. Va., July 14, 1999) ("The Congressional scheme is better carried out by permitting partial discharge or some other modification of the student loan debt in certain circumstances. Although complete discharge or nondischarge should remain the rule under § 523(a)(8)(B), some variance from the general rule should be permissible where the situation presents an inability to pay which may not continue indefinitely.")

In the case at bar, there is no certainty that the debtor's pay will increase (there is no such guarantee in any case), however, the debtor does have an MBA and may be able to earn a larger salary in the future. Additionally, she will soon have the right to petition the state court for an increase in child support and she can immediately reduce some unnecessary expenses. Because the Court is unable to say with certainty that the debtor's current financial situation is likely to continue indefinitely, but has found that the debtor's current finances as related to the entire student loan debt does fall within the "certainty of hopelessness" qualification, it is

19

more appropriate to award her only a partial discharge of her student loan debt. *See Mosko II*, 2006 U.S. Dist. Lexis 20202, at *8 (holding that the debtor met the second requirement of the *Brunner* test as to the entirety of his student loan debt, but not such that he was entitled to a full discharge.)

### III. CONCLUSION

The Court finds that under the circumstances of this case, the debtor has met her burden of proof as to all three factors of the *Brunner* test and that she would suffer undue hardship if she had to repay the full amount due on her student loans. However, the debtor is able to repay a portion of her debt without suffering such undue hardship.

The Court finds that it would not be undue hardship for the debtor to pay $160.00 per month on her student loan debt for a period of 360 months, payments totaling $57,600.00, after which time the balance of her student loans, including any interest, costs or fees accrued on the loan, will be discharged in its entirety.

**IT IS SO ORDERED.**

Norfolk, Virginia

                                                                _____
                                                                 DAVID H. ADAMS
                                                                 United States Bankruptcy Judge

Copies to:
    Robert V. Roussos, Esq.
    Rand L. Gelber, Esq.
    R. Clinton Stackhouse, Jr., Trustee